Walker v. Day, Griswold & Co.

W. W. WALKER v. DAY, GRISWOLD & CO.

1. ATTACHMENT.  Where the proceeding is by publication and based on false grounds, as non-residence, the decree, valid on its face, may be attacked by original bill for fraud, but not collaterally.

2. RES JUDICATA.  Where there has been a sale of land under a decree valid on its face, a judgment in ejectment against the owner, on the ground that the decree could not be collaterally attacked, is no bar to an original bill to set aside the decree and sale under it for fraud.

3. MULTIFARIOUSNESS.  Where different tracts of land were sold under the decree to different purchasers, it is not multifarious to join all in the same bill.

FROM KNOX.

Appeal from the Chancery Court.    A. CALDWELL, Special Chancellor.

WASHBURN for Walker.

BAXTER & SON and T. S. WEBB for Griswold.

TURNEY, J., delivered the opinion of the court.

The object of the bill is to set aside sales of real estate under a decree of the chancery court, the bill assuming that under the facts relied on the sales were absolutely void. The grounds for impeaching the decree, and upon which the relief prayed for is predicated, are, that the bill of Day, Griswold & Co. was filed August 6, 1864, alleging an indebtedness from Walker, and charging that he "had fled from the State, or so absconded as to prevent service of the ordinary process," and asking for an attachment upon his property, &c.; that publication, insisted to be informal and not in compliance with law, was made, &c.; that complainant Walker had left Knoxville, the place of his residence, in August, 1863, when the Federal forces were about to occupy East Tennessee, and was, from that time till the close of the war, within the military lines of the Confederate authorities, he being an adherent to the Confederate government, and did not see nor hear of the publication, and, indeed, could not lawfully see or obey it; that he visited Tennessee in June, 1866, and then for the first time heard of the attachment; that the bill of Day, Griswold & Co. was sworn to by O. P. Temple, their agent and solicitor; that complainant was not a non-resident nor absconding debtor within the meaning of the attachment laws, and could not lawfully be proceeded against by the attachment of his property; that the recitals in the decree and judgment *pro confesso* are false; that they were drawn by said solicitor and agent, who lived in Knoxville and knew that complainant had retired South, was an ad-

Walker *v.* Day, Griswold & Co.

herent of the Confederate government and not · within the Feneral lines, and said facts were also known to defendants Bearden, Turner and Nelson; that these false recitals were a fraud in law, whether any fraud in fact were intended or not.

The attachment was levied upon several · lots of land, which were sold under decree and purchased by several persons, who are made defendants.

Complainant instituted an action of ejectment for the lot purchased by M. D. Bearden. The case went to the supreme court, and it was there held that the complainant could not, in that collateral proceeding, show that the publication was void, either by showing what it contained or by showing that complainant was at the time within the rebel lines.

The bill is demurred to, and it is insisted that the proceedings in the original chancery cause were regular; that good titles were communicated to the purchasers; that complainant here cannot aver against the truth, nor by evidence establish the falsity, of any recital of fact contained in the decree; that the merits of this case have been finally adjudicated in the action of ejectment, and that the bill is multifarious in joining defendants between whom there is no privity.

In the view we take of the case, it is unnecessary to decide whether the publications were sufficient in substance. The demurrer for multifariousness is not well taken. The sales of the several lots were the result of a single proceeding. The parties, by their purchases, made themselves parties to that proceeding, and derived whatever rights or titles they

may have therefrom. It was the title and property of Walker attempted to be reached, and the claims of right of the purchasers came from that common source through the judicial sale. The decree attacked by this bill, and through which the defendants are compelled to claim, is the single fountain, and if it fail, the claims flowing from it must also fail. The argument that the merits of the case have been adjudicated, is to be determined by the opinion in that case. Judge Deaderick, delivering the opinion of the court, said: "The repeated adjudications that the recitals in the decree are sufficient evidence of publication must be conclusive unless the record itself shows the contrary. It is the presumption the law raises that the proceedings are regular unless the contrary affirmatively appear. There is no part of the record which shows that the publication was not regularly made; none that it was made at any time but the presumption arising from the recitals in the decree, and this presumption is sufficient till overthrown by proof in the record. The proceedings in the chancery court are collaterally attacked as void. To determine this question you look to the record above. Its allegations are, that defendant is a non-resident, has absconded, but it does not appear that he was outside the Federal and within the Confederate lines; and even if it were apparent from the record that publication was made before October, 1864, and during the Federal occupation of Knoxville, the record itself does not show that Walker was not also within the Federal lines. It only shows he was a non-resident

of Tennessee or absconded. In this collateral attack upon the chancery proceedings we are necessarily restricted to the impeached record to determine the question whether the court had jurisdiction of the person of the defendant Walker in that case. Upon their face they are sufficient to give the court jurisdiction, and we are not at liberty, upon well settled rules of law, to go outside the record to ascertain whether publication was made in or before October, 1864, or in June, 1865, nor to hear proof to show whether Walker was in Georgia or Kentucky."

The rules laid down in this extract from the opinion in the ejectment suit are carefully and distinctly confined to collateral attacks. We adhere to them as sound and long established.

There was an action of ejectment, in which the plaintiff had deraigned his title and rested his case. To defeat him, a record from another court, of competent jurisdiction to divest and invest title, is produced, regular and in form upon its face; and now, to destroy its force as a muniment of title, it is proposed to show that it is the creature of fraud, accident or mistake, and when this shall have been done, to leave no evidence of the manner in which it was done, nor in fact that it was done at all, for there would be nothing but the simple and ordinary judgment in ejectment with no recital of the facts upon which it is founded; besides, there can be nothing in the pleadings in the action to notify parties that they are called upon to defend the regularity and fairness of the chancery proceeding. If the decree had

6—VOL. 8.

no foundation in truth, but was predicated of a pro-
ceeding false in all its parts and in every particular,
but upon its face substantial, the rule is the same,
and before a party can avail himself of such objec-
tions existing in extraneous facts, he must invoke the
powers of a court of chancery to declare it void.
This must be done by direct proceeding to vacate, by
showing the existence of things directly contrary to
the recitals of the decree sought to be impeached, and
in a suit for the especial purpose.   For instance, if
in the case before us the decree had recited that the
defendant had been regularly summoned, that judg-
ment *pro confesso* had been regularly taken, etc., when,
in truth, neither was so, the defendant knew nothing
of the suit, but it was instituted and prosecuted to a
final decree by the fraud and falsehood of complain-
ant, the record showing perfect regularity, no one will
insist that in such case the party aggrieved would be
without remedy in equity, while generally he would
be at law, and if such decree were attempted to be
used against him at law he would be without remedy
until he had been relieved in equity.   So, then, if
the decree here impeached was obtained by fraud, or
without the concurring steps necessary to give the
chancery court jurisdiction, and such omissions are kept
from view by false recitals, the judgment in ejectment
is not upon the merits, and the complainant may, by
bill in chancery, relieve himself from the consequences
of the fraud, mistake or accident.

It is too long settled to be now questioned that a
decree may be set aside for fraud, upon an original

bill for the purpose. Mr. Adams, in his work on Equity, top p. 776, marginal p. 420, says: "A bill to set aside a decree for fraud must state the decree and the proceedings which led to it, with the circumstances of fraud on which it is impeached. The prayer must necessarily be varied according to the nature of the fraud used and the extent of its operation in obtaining an improper decree." This rule has been strictly observed in the bill before us. The same rule will obtain as to a decree rendered in mistake or by accident without fault or negligence on the part of the party aggrieved thereby.

The remaining question is, was Walker in court by the publication? It appears that he had left the State for about one year before the filing of the bill, and was, from that time to the close of the war, within the Confederate lines, while Knoxville, where the suit was instituted and publication made, was within the Federal lines. To have returned, if he had been at liberty to do so, would have been to have gone into voluntary imprisonment, and thereby to have as completely deprived himself of the means of defense as to have remained within the Confederate lines. Communication was prohibited, if not by legislative, by the more effective power, force of arms. Publication is a substitute for summons, and is presumed, under ordinary circumstances, to come to the notice of him to whom it is directed. In war such as then raged in these States, no such presumption can arise for and against parties divided by two hostile armies, with every inlet and outlet picketed and guarded every

moment of day and night by details from every arm of the service on both sides. It was next to impossible for persons to pass through; the attempt to do so was taking one's life into his own hands, and running the gauntlet with all the chances against him. To have presumed that the notice was seen or known of, and therefore requiring the party to be affected by it, was to presume and require impossibilities.

Taking the allegations of the bill to be true, the complainant was never before the court, and therefore not bound by the decree sought to be impeached.

Affirmed.